Dear Representative Jackson:
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
 May a substate planning district negotiate and charge a fee to public agencies to cover the administrative costs the district incurs in establishing and maintaining a special account for the deposit of monies remitted by a wireless service provider derived from collection of the nine-one-one emergency wireless telephone fee, which is distributed by the substate planning district to the public agencies?
Your question arises from the provisions of the Nine-One-One Wireless Emergency Number Act ("Act"), 63 O.S. 2001 Supp. 2007, §§ 2841 — 2847, related to administrative costs imposed upon and incurred by substate planning districts. To answer your question we must look primarily at the language used in the Act.
 THE NINE-ONE-ONE WIRELESS EMERGENCY NUMBER ACT
Section 2843(11) of the Act defines the term "wireless service provider" in pertinent part to mean:
 [A] provider of commercial mobile service . . . and includes a provider of wireless two-way communication service, radio-telephone communications related to cellular telephone service, network radio access lines or the equivalent, and personal communication service.
Id. In Section 2843(4), the term "nine-one-one emergency wireless telephone fee" is defined to mean "a fee to finance the installation and operation of emergency wireless telephone service and related equipment[.]" Id. According to Section 2843.1(A), the emergency wireless telephone fee may only be imposed if it is approved in a county election by a majority of the votes cast in such election. Section 2843.1(A) further provides that the amount of the emergency wireless telephone fee is fixed at fifty cents per month for each wireless connection in a county. *Page 2 
The term "wireless service provider" under Section 2843.1(B) of the Act mandates that wireless service providers collect the voter-approved, fifty-cent emergency wireless telephone fee from each wireless connection in a county and remit the collected fees to the appropriate substate planning district monthly. To compensate the wireless service providers for the costs they incur in collecting and remitting the emergency wireless telephone fees to the substate planning districts, Section 2843.1(B) in pertinent part states, "The wireless service providermay retain an administrative fee of two percent (2%) of the amount collectedwhen remitted in the time specified, unless otherwise agreed upon." Id.
(emphasis added). Section 2843.1(B) is significant because it is the only provision in the Act that imposes any type of administrative fee. The administrative fee may be retained from the voter-approved, fifty-cent emergency wireless telephone fees collected, and may only be retained by a wireless service provider. Id. 2843.1(A), (B).
According to Section 2843(10) of the Act, substate planning districts include the following organizations:
 a. Association of Central Oklahoma Governments (ACOG),
 b. Association of South Central Oklahoma Governments (ASCOG),
 c. Central Oklahoma Economic Development District (COEDD),
 d. Eastern Oklahoma Economic Development District (EOEDD),
 e. Grand Gateway Economic Development Association (GGEDA),
 f. Indian Nations Council of Governments (INCOG),
 g. Kiamichi Economic Development District (KEDDO),
 h. Northern Oklahoma Development Association (NODA),
 i. Oklahoma Economic Development Association (OEDA),
 j. Southern Oklahoma Development Association (SODA), and
 k. South Western Oklahoma Development Authority (SWODA)[.]
Id.
Section 2843.1 places certain administrative duties on substate planning districts. Section 2843.1(B) in pertinent part states, "Themoney remitted to the substate planning district and any other money collected to fund the emergency wireless telephone system shall bedeposited *Page 3 in a special wireless nine-one-one account established by the district."Id. (emphasis added). Section 2843.1(C) states in pertinent part that:
 The substate planning districts shall distribute the money collected for each county which has approved the emergency wireless telephone fee to each public agency within that county which has established emergency wireless telephone service. . . . The money remitted to the public agency and any other money collected to fund the emergency wireless telephone system shall be deposited in a special wireless nine-one-one account established by the substate planning district. From the emergency wireless telephone fee, the substate planning districts shall distribute to other public agencies in the county their proportionate share attributable to emergency wireless telephone services as determined by at least an annual census of wireless users provided by the wireless service provider.
Id. (emphasis added). The term "public agency" is defined in Section 2843(9) of the Act to mean "any city, town, county, municipal corporation, public district, public trust, substate planning district, or public authority located within this state which provides or has authority to provide fire fighting, law enforcement, ambulance, emergency medical, or other emergency services[.]" Id. Under Section 2843.1(C), the administrative duties imposed upon substate planning districts include establishing a special account to hold the fees remitted to the districts by wireless service providers, which are then to be distributed to appropriate public agencies. While Section 2843.1(B) provides that a wireless service provider may retain an administrative fee, the Act is silent as to any other administrative fee or any mechanism by which a substate planning district may cover the costs it incurs to provide such services to any public agency.
The Oklahoma Supreme Court discussed the rules of statutory construction in the case of City of Durant v. Cicio, 50 P.3d 218, 220
(Okla. 2002), stating, "The fundamental rule of statutory construction is to ascertain and give effect to the legislative intent, and that intent is first sought in the language of a statute." Id. The language of the Act identifies only one administrative fee and that fee is only to be retained by a wireless service provider from the proceeds derived from the voter-approved emergency wireless telephone fee.
In City of Duncan v. Bingham, 394 P.2d 456, 460 (Okla. 1964), the Oklahoma Supreme Court stated that "legislative silence, when it has authority to speak, may be considered as giving rise to an implication of legislative intent." Id. In its adoption of the Act, the Oklahoma Legislature could have provided for the imposition of an administrative fee to be paid to or retained by a substate planning district, but it did not do so. Such legislative silence implies that a substate planning district is not authorized to negotiate and charge a fee to public agencies to cover the administrative costs it incurs in establishing and maintaining a special account for the deposit of monies remitted by a wireless service provider or in distributing such monies to the public agencies. *Page 4 It is, therefore, the official Opinion of the Attorney General that:
 Under the authority of the Nine-One-One Wireless Emergency Number Act, 63 O.S.Supp. 2007, §§ 2841[63-2841] — 2847, a substate planning district may not charge a fee, through negotiation or otherwise, to public agencies to cover the administrative costs the district incurs in establishing and maintaining a special account for the deposit of monies remitted by a wireless service provider.
W.A. DREW EDMONDSON
ATTORNEY GENERAL OF OKLAHOMA
BRYAN NEAL
ASSISTANT ATTORNEY GENERAL